PEDRO BATISTA ANDINO, ETC., Plaintiff and Appellant, *v.* FLORENTINO CARRERA BLANCO, Defendant and Appellee.

No. 7632. Argued December 13, 1937.—Decided April 8, 1938.

A. *Rivas* for appellant.   *F. Fernández Cuyar* and *H. González Blanes* for appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

The facts in this case are intimately connected with those in the case of *Carrera* v. *Palerm,* 52 P.R.R. 789. For a more detailed account of the original mortgage transaction, therefore, reference may be had to the above decision.

On November 5, 1929, Gabriel Palerm Enrich and his wife executed a mortgage deed on two properties, described hereafter as "A" and "B," in favor of Florentino Carrera Blanco to secure a loan of $20,000. The mortgagors also subscribed four promissory notes of $5,000 each to the order of the mortgagee. On the same day Palerm and Carrera entered into a private agreement by which two mortgage notes to bearer of $10,000 and $15,000, respectively, were pledged to the creditor as additional security for the satisfaction of the original $20,000 loan. One of the conditions of this private or collateral agreement was that upon the payment of the first $5,000 on the original loan, the note to bearer for $10,000 would be returned to the debtor and on the satisfaction of a second $5,000, the other $15,000 note to bearer would be likewise returned.

On September 10, 1930, Gabriel Palerm and his wife sold to Pedro Batista Andino the mortgaged properties "A" and "B" and also another property, "C," which secured the pledged mortgage note to bearer of $15,000. Together with

this realty, it is alleged that the vendor transferred the title to the pledged notes and all rights to obtain their return. It appears that the purchase price was $37,000; that Batista only paid $2,000 in cash and retained $35,000 to pay the $20,000 mortgage on properties "A" and "B," and the $15,000 mortgage on property "C." It does not appear that he personally assumed the payment of these debts, nor that Carrera ever accepted him in substitution as debtor or even indeed that Carrera had any knowledge of anything but that the properties referred to had been transferred to Batista. Subsequently, Carrera was paid $10,000 on account of his mortgage credit. As a result of this partial payment he returned two of the $5,000 promissory notes and the $10,000 mortgage note which had been pledged. As to the other $15,000 note, Gabriel Palerm, who was the only person who had ever dealt with Carrera, agreed with Carrera that the latter should retain its possession for a consideration set out in the record and which included, among other things, the release, as to the original mortgage, of a portion segregated by Batista and sold to Latoni. This agreement, which modified the original collateral agreement of November 5, 1929, was signed by Palerm and the representative of Carrera. It seems that Palerm's wife had died prior to this transaction.

The present suit was brought by Batista to recover the possession of the $15,000 note to bearer which had been given as collateral guaranty on the ground that he had obtained all title to it when he purchased properties "A," "B," and "C." He maintains that the modified agreement entered into by Palerm and Carrera in 1932 was null because (a) Palerm had transferred all his rights under the agreement to Batista, and (b) because, even assuming that Palerm's assignment did not bind Carrera, Palerm had no authority, since his wife was dead, to modify the agreement by himself.

It is clear that the assignment which took place from Palerm to Batista was never notified to Carrera. Batista maintains, however, that notice was not necessary under sec-

tions 1172, 1181 and 1416 of the Civil Code (1930 ed.), and that, therefore, he has a right to the return of the $15,000 note inasmuch as the terms of the original agreement have been fulfilled. The lower court rendered judgment against the plaintiff and mulcted him in costs including attorney's fees.

The above statement of facts has been obtained from the different motions before us, and the briefs of the parties in the lower court, which we admitted for the purpose of information.

Two motions are now pending our consideration. One is a motion for reconsideration of our order of November 30, 1937, refusing to grant a new term within which to file the transcript of the evidence. The other is a motion to dismiss the appeal because of the absence of a record on appeal.

Inasmuch as a denial of the motion for reconsideration would necessarily carry with it the dismissal of the appeal for lack of a record, we shall first concentrate our attention on the appellant's motion.

■ We are still convinced that appellant has not been diligent in the prosecution of this appeal. Judgment in the trial court was rendered on April 30, 1937, and notified on May 5, of the same year. The appeal was taken on June 1, 1937, and nothing was filed in this court until November 2, 1937, more than five months after the appeal had been taken, and then it was a motion for a new term. Even at this late date there is no judgment roll before this court, or duly filed in the secretary's office. On December 10, 1937, when the appellant filed his motion for reconsideration, he attached thereto a copy of the trial court's opinion and of the transcript of the evidence, certified to by the stenographer of the said court.

Under these circumstances, the appellant is in a position where he failed to bring up the record within thirty days after appealing, and, unless we reconsider our order of November 30, 1937, the case falls under the doctrine of *Sán-*

*chez Osorio* v. *Vizcarrondo,* 40 P.R.R. 249, and others. We are not at all inclined to reconsider the order mentioned on either of the grounds of justification or injustice.

█ The only question which remains is whether we should exercise our discretion to grant appellant a new term if he convinces us that he has a meritorious appeal. To show its *prima facie* merit, appellant has set out six of the conclusions reached by the trial court. Let us consider them.

A.—The item discussed under this letter is perhaps the most important. According to Batista, the lower court held that the assignment to Batista, of Palerm's rights under the ''original collateral agreement'' between Palerm and Carrera, was ineffective because of the omission to notify Carrera of such an assignment. Batista also maintains that the court treated such agreement as a negotiable instrument. We have read the opinion and find that the court refers to the rights or equities in the *mortgage note* itself and not necessarily to the rights in the collateral agreement. Regardless of the judge's reasoning, our view of the assignment and of this whole transaction from its beginning leads us strongly to favor the position of Carrera. It may be that Batista acquired all of Palerm's rights, as far as Palerm himself was concerned. His failure, however, to notify Carrera at the time of this transmission of rights or even when Carrera subsequently released the original mortgage on the segregated portion sold as it was to Latoni by Batista in consideration, partly, of the retention of the $15,000 mortgage as collateral security renders the latter's position inequitable. Such notice might have very properly affected Carrera's attitude towards the release, especially if Batista had insisted upon enforcing the original agreement. Batista knew that Carrera had always dealt with Palerm; he knew also that he, Batista, had done nothing to make Carrera think that Palerm no longer had any right to obtain the benefits under the collateral agreement. Under those circumstances he should suffer the consequences of any dealings sub-

sequently had between Palerm and Carrera, especially, we repeat, where as a result of those subsequent dealings, Batista, personally, was enabled to sell part of the originally mortgaged premises, free of the lien. Such a sale, we must presume, inured to Batista's benefit. There are other considerations with regard to the effect which should be given to the supposed assignment which merely strengthen our conviction that the judgment of the lower court was justified.

B.—There is no doubt of the correctness of the trial court's holding to the effect that Batista was never accepted as substituted debtor in place of Palerm.

C.—This item has no importance whatsoever for the purposes of the appeal.

D and E.—We are not entirely convinced that Palerm had absolute authority to modify the original agreement, but such a defense should be more properly raised by the heirs of Palerm's wife. Certainly Palerm, who was a joint and several obligor under the $15,000 note, had authority to affect whatever interest he may have had in the property mortgaged to secure said note. Besides, he was personally liable on the note and that responsibility might be worth something.

F.—This holding of the lower court we think could not affect the actual merits of the case.

For the reasons discussed above and because we are not convinced that appellant's contentions on appeal are meritorious, we are of the opinion that the motion for reconsideration of December 10, 1937, should be denied and consequently that the appeal should be dismissed for failure to file a record in this court within the statutory period.

Appeal dismissed.

Mr. Justice Travieso took no part in the decision of this case.